432 P.2d 339

**Artie Missie BANKS, Plaintiff and Appellant,**

v.

**:Roy SHIVERS, Defendant and Respondent.**

**No. 10854.**

Supreme Court of Utah.

Oct. 2, 1967.

Karras, Van Sciver & Yocom, Robert Van Sciver, Salt Lake City, for appellant.

Olson & Hoggan, L. Brent Hoggan, Logan, for respondent.

HENRIOD, Justice.

Appeal from a judgment entered on a jury verdict of no cause of action in an assault and battery action. Affirmed, with costs to Shivers.

Miss Banks and Shivers were students at a Utah university. The first lived in a girls' dorm on campus,—the other somewhere else. The first, a buxom girl of 18, claims that Shivers, a bonus baby weighing only 195 pounds, skillful in punching football players, member of the varsity squad, with $300,000 contract to professionalize himself with a nationally known team dedicated to the mayhemic art of football, punched and choked her in her castle on the occasion of a chicken-fry indulged by herself, her roommate, the footballer and two other so-called friends. On very controversial evidence, the jury decided against the plaintiff and embraced the defendant's con-

tention in record time. A statement of the facts is made in Mr. Justice Ellett's dissent, which statement we adopt. As related, the facts were conflicting, and the jury had the prerogative of determining who was the victor,—a determination which we cannot disturb unless clearly against the weight and credibility of the evidence,—which it wasn't, as reflected from the record. It can be said for Miss Banks that she did not like Shivers. Hinting a little, we point out that Miss Banks had no scars, jars or mars from the strange encounter, but the behemoth, tenth-of-a-ton defendant suffered questionable damage to his groin, and considerable damage to his two lips that profusely bled all the way home.

Miss Banks says 1): that the evidence does not support the verdict, and that 2) an instruction to the effect that "An assault is an unlawful attempt coupled with a present ability to commit an injury on the person of another" was erroneous.

As to 1): The evidence, more than in the ordinary case, would sustain the verdict, looking at it in a light favorable to it.

As to 2): The point on appeal attempts to make some kind of distinction between putting one in "apprehension" of harm, and putting one in "fear of harm." Any standard, recognized dictionary, makes the two terms synonymous and the fine distinction urged by Miss Banks, based on the Restatement's use of the word "apprehen-sion" instead of "fear" is not impressive, and that under the particular facts of this case the instruction was not offensive. Assuming so, arguendo, we think it was not prejudicial.

CROCKETT, C. J., and CALLISTER, and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting):

Plaintiff and defendant sued and counter-claimed for damages resulting from an assault and battery which each claims the other committed. The jury returned a verdict for no cause of action upon both claims, and the plaintiff only has appealed.

We must affirm the judgment if there is any substantial evidence to support it unless the court committed reversible error during the trial.

The plaintiff claims the court erred in two respects during the trial of the case: (1) Error in denying plaintiff's motion for a new trial. (2) Error in instructing the jury regarding civil assault.

The following facts were established beyond the peradventure of any doubt:

1. Both plaintiff and defendant were resident students of the Utah State University.

2. Some time prior to the time of the alleged assaults the defendant and two other men, without any invitation to do so, en-

tered the plaintiff's apartment and ate some chicken which she and her boy friend had bought.

3. Thereafter plaintiff had a spirit of hostility towards the defendant.

4. Defendant was a football player on the school team and weighed about 195 pounds.

5. The plaintiff was an eighteen-year-old girl.

6. Plaintiff and another girl shared an apartment jointly.

7. On the occasion in question defendant and a male companion came to plaintiff's apartment and were admitted by the other occupant of the apartment.

8. The men had some uncooked chicken which they wanted cooked because their own utilities had been shut off for non-payment of bills.

9. After some unpleasant remarks to each other, the defendant clapped his hands in front of plaintiff's face.

10. Plaintiff ordered defendant to leave, and defendant said he would not do so until his chicken was cooked.

11. Plaintiff hit defendant in the mouth, causing some blood to flow.

There is a dispute as to what occurred thereafter. The defendant testified that he grabbed both hands of plaintiff and pushed her down on the floor, stood over her, and kept getting madder and madder; that after he pushed plaintiff he never held her hand, and she fell to the floor; that he was walking back to get his hat when plaintiff kicked him in the side and groin; that he said, "I'm going to rap you up side your head" and then pushed her head down; that he used a couple of four-letter words; that he grabbed her and said, "I ought to break your neck"; that he snatched her and kept his hands on her three or four seconds, until his companion told him to let her go.

There is testimony from the plaintiff and other witnesses to the effect that the clapping of the hands in front of the plaintiff's face was with considerable violence and indicated a great deal of hostility, being accompanied at the same time with words to the effect that "I ought to knock you up side of your nappy head."

It would appear that the jury was within its province in believing the defendant's version of how the fracas occurred if it chose to do so; and under the instructions given also could have found that he used no more force than was reasonably necessary in preventing the plaintiff from battering him. However, it would seem that by clapping his hands in plaintiff's face he committed a civil assault upon her, and for that she should have judgment for such a sum as would make her whole, even though it be only for a nominal amount.

The second claim of error on behalf of the plaintiff was in the giving of Instruction No. 1, which so far as material here

defined an assault as follows: "An assault is an unlawful attempt coupled with a present ability to commit an injury upon the person of another."

The plaintiff excepted to the instruction given by the lower court as "being contrary to law." This general exception would not be sufficient to bring the matter to the trial court's attention sufficiently for him to correct it if that is all that was done. However, in addition thereto the plaintiff requested the court to instruct as follows: "You are instructed that if you believe from the evidence that defendant angrily and unlawfully clapped his hands in front of Plaintiff's face when he was in such proximity to her that he could, or might have, struck her, and near enough to produce a feeling on her part that she might be struck, that would be an assault. * * *"

I think the exception together with the proffered instruction was sufficient to justify this court in considering whether or not error was committed in giving the instruction which the court gave.

In determining whether the definition given is erroneous, we should be aware of the fact that if it is, it is not the fault of the trial judge, for this Supreme Court has approved a similar instruction as far back as 1898. In the case of Ganaway v. Salt Lake Dramatic Association, 17 Utah 37, 53 P. 850, the trial court instructed as follows: "An assault is an attempt, coupled with an ability, to commit a violent injury upon the person of another."

This court in passing on the question of whether or not the instruction was erroneous said that it was because it had omitted to state that the attempt was *unlawful*. The differences between the instruction given by the court in the instant case and the approved instruction in the Ganaway case are as follows: (1) The present instruction omitted the word "violent." (2) The present instruction used the term "present ability" instead of "ability."

Our criminal law defines an assault as follows: "An assault is an unlawful attempt coupled with a present ability to commit a violent injury on the person of another." (Section 76–7–1, U.C.A.1953) This definition is intended to forestall violence and thus to prevent a breach of the peace. However, the aim of the law in protecting people against civil assaults is more in the nature of giving an assurance of tranquility to the one assaulted than in prosecuting the one guilty thereof.

Section 21 of the Restatement of the Law of Torts, Second, is as follows:

§ 21. Assault.

(1) An actor is subject to liability to another for assault if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an im-

minent apprehension of such a contact, and

(b) the other is thereby put in such imminent apprehension.

\*　　\*　　\*　　\*　　\*　　\*.

c. In order that the actor shall be liable under the rule stated in this Section, it is only necessary that his act should cause an apprehension of an immediate contact, whether harmful or merely offensive. It is not necessary that it should directly or indirectly cause any tangible and material harm to the other. \* \* \*

d. An act is done with the intention of putting the other in apprehension of an immediate harmful or offensive contact if it is done for the purpose of causing such an apprehension or with knowledge that, to a substantial certainty, such apprehension will result.

\*　　\*　　\*　　\*　　\*　　\*

On page 38 of LAW OF TORTS, 3rd Edition, by Professor Prosser, it is said: "Apprehension is not the same thing as fear, and the plaintiff is not deprived of his action merely because he is too courageous to be frightened or intimidated."

The bravest of men could have an apprehension of an unlawful contact being made with him, and he does not need to be afraid of the consequences in order to have an assault perpetrated upon him.

In the instant case I believe the instruction given by the court would be misleading in that the jury well could have thought that the defendant did not *intend to commit an injury upon the person of the plaintiff*, and yet it could hardly fail to believe that he *intended to put her in some apprehension of being struck.*

If a proper instruction had been given to the jury, it could hardly have failed to find that the defendant made the first assault on plaintiff, and this well could have affected the verdict.

I am not of the opinion that the definition in the criminal law is sufficient to protect the civil interests of a person who has been assaulted, and, therefore, I would disapprove of the instruction given by the court. I believe it is more consonant with recent holdings of other courts to say that a person is entitled to recover when the wrongful conduct of another has induced an apprehension of an immediate harmful or offensive contact.

The case should be remanded for a new trial. The plaintiff should have her costs.